FILED '09 JAN 15 12:05 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JONATHAN ELEK,

        Plaintiff,        Civil No. 07-6219-TC

    v.                        FINDINGS AND
                                RECOMMENDATION
SAFEWAY, INC., a foreign
Corporation,

        Defendant.

COFFIN, Magistrate Judge:

Plaintiff is a "float pharmacist" employed by defendant Safeway. A float pharmacist is scheduled to fill in for regular staff pharmacists who need to take time off. Plaintiff is scheduled at stores throughout the State of Oregon.

Plaintiff alleges that he was unlawfully retaliated against after he reported a hazard to an outside agency and filed a worker's compensation claim. Plaintiff's underlying injury came from a used needle that had been improperly placed in new needle inventory.

Plaintiff brings two claims. One is made pursuant to ORS 659A.040 (Worker's Compensation Discrimination). The other is made pursuant

to ORS 654.062 (Health/Safety Hazard Discrimination). Jurisdiction is based on diversity of citizenship.

Presently before the court is defendant's motion (#45) for summary judgment. For the reasons stated below, the motion should be granted and this action should be dismissed.

## STANDARDS

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Id. at 32. There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355 (1986); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).

## DISCUSSION

Plaintiff's case is essentially one of retaliation. As such, plaintiff must ultimately prove that he engaged in protected activity, that he was thereafter subjected to an adverse employment action and that there was a causal nexus between the two. See, Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir. 1984). The parties also set forth more specific elements based on the particular statutes asserted in the complaint, but, for the purposes of this motion, the analysis and outcome are the same regardless of how the matter is presented. This court will assume for this motion that plaintiff has established that he engaged in protected activity pursuant to the statutes asserted in his complaint. As to the definition of an adverse action, plaintiff cites Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000) ("an action is cognizable as an adverse employment action if it is reasonably likely

to deter employees from engaging in protected activity") and <u>Burlington Northern & Santa Fe Ry. v. White</u>, 548 U.S. 53, 68 (2006)(in case where employee was suspended, Court held that plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination"). <u>See also</u> <u>Coszalter v. City of Salem</u>, 320 F.3d 928, 976 (9th Cir. 2003)(in First Amendment government employer case, there is a valid claim if plaintiffs can establish that the actions taken by the defendants were reasonably likely to deter them from engaging in protected activity).[1]

Plaintiff, who is still employed by Safeway, asserts that he was subjected to adverse employment actions and retaliated against in the following ways:

1) he ceased receiving his pay stubs in violation of Oregon law;

2) he was accused of violating protocol in the manner in which he sought medical attention for his injury and was threatened that he might have to pay for his own medical treatment;

3) he was removed from the schedule of at least three stores without justification; and

4) his hours were unilaterally reduced by Safeway and he was forced to beg for hours.

---

[1] Although not necessary for the present ruling, it should be noted that there are many differences between the present case and those cited above. For example, plaintiff was never suspended like the plaintiff in <u>Burlington Northern</u> and plaintiff was not subjected to actions deemed adverse in <u>Coszalter</u>. See generally footnote 2 of Defendant's Reply to Plaintiff's Supplemental Brief(#69).

4 - ORDER

P. 11 of Plaintiff's Opposition(#55) and p. 2 of Plaintiff's Supplemental Brief(#67).

An examination of these allegations, individually and taken together, indicates that actionable retaliation is not present in this case.

1. <u>Pay Stubs</u>

Plaintiff's paychecks have been, and still are, electronically deposited in his bank account. Plaintiff contends that he stopped receiving his pay stubs for a period of four months after his report of unsafe working conditions. However, plaintiff's own email indicates that he was having problems with pay stubs prior to his injury of January 19, 2007. P. 1 of Exh D-2 (#58). As such, plaintiff has failed to adequately show a causal nexus between the alleged adverse employment action and his protected activity. Defendant is entitled to summary judgment as plaintiff has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. Moreover, even if plaintiff could adequately show causation, the would be retaliatory action involving pay stubs "is so insignificant that it does not deter the exercise of [protected] rights, and thus does not constitute an adverse action within the meaning of ... retaliation cases." <u>See</u> <u>Coszalter</u>, 320 F.3d at 975.

5 - ORDER

2. <u>Assertion Regarding Protocol Violation and Alleged Threat</u>

Plaintiff asserts he was accused of violating protocol in the manner in which he sought medical attention for his injury and was threatened that he might have to pay for his own medical treatment.

While plaintiff was at the emergency room receiving treatment for his injury, he received a voice mail from regional supervisor Marc Watt:

> John, ths is Marc. I have a problem here. The protocol is that you have to call our OSHA nurse, report this and they will direct you to a hospital if it is appropriate. Like going to the hospital prior to the phone call, your putting yourself at risk for having to pay for the entire office visit because that is the protocol that I was trying to get pulled up before you left. So, if you get this, immediately, when you're done at the hospital you need to go back to the store and report to the store manager and make the phone call and go from there. And on these kind of things, we'll talk about it later. Page me if you have any questions...

P. 3 of Opposition(#55).

Being advised that you are putting yourself at risk to pay for an office visit and direction on how to address that risk favorably[2] is not an adverse action as it is not reasonably likely to deter employees from engaging in protected activity. See <u>Coszalter</u>, 320 F.3d at 976. Such is the case even under plaintiff's characterization of the voice mail. Being verbally threatened and bad mouthed, even if taken in response to protected speech, does not

---

[2]Defendant paid for all of plaintiff's treatment and plaintiff does not assert that there was any difficulty involving payment of plaintiff's medical bills.

6 - ORDER

constitute an adverse employment action. Nunez v. City of Los Angeles, 147 F.3d 867, 875 (9th Cir. 1998). This "would-be retaliatory action is so insignificant that it does not deter the exercise of [protected] rights, and thus does not constitute an adverse action within the meaning of ... retaliation cases." See Coszalter, 320 F.3d at 975. As such, plaintiff has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. Even if an adverse action was involved, defendant has articulated a legitimate, nonretaliatory reason for the action taken (to prevent plaintiff from having to pay for a worker's compensation injury) and plaintiff, all things considered, has not adequately shown that such reason could be pretextual.[3]

---

[3] Once a legitimate reason for the action taken is articulated, plaintiff must ultimately show that the reason is pretextual, i.e., that the reason is not the real reason and, ultimately, that the real determining reason for the adverse action is retaliation. "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial.... Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F3d 1217, 1221 (9th Cir. 1998)(quotations and citations omitted). In those cases where direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence of "pretense" must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to retaliate on an improper basis. See Id. To satisfy his burden, and survive summary judgment, plaintiff must produce enough evidence to allow a reasonable fact finder to conclude either (a) that the alleged reasons for the adverse employment decisions were false, or (b) that the true reasons for the adverse employment decisions were retaliatory ones. See, Nidds v. Schindler Elevator Corporation, 113 F.3d 912, 918 (9th Cir. 1997).

7 - ORDER

3.  <u>Removal from Schedule at Three Stores</u>

Plaintiff contends he was removed from the schedule of the Pendleton, La Grande and Baker City stores in Eastern Oregon without justification. However, such does not amount to retaliation in the circumstances of this case.

<u>The Pendleton Store</u>

The Pendelton store in Eastern Oregon is distant from plaintiff's home store in Central Oregon, but plaintiff states that he likes the Pendleton store as he has relatives in the area he likes to visit and he has built a relationship with the pharmacy staff there after working there numerous times. However, plaintiff admits that as a floating pharmacist he has no guarantee of being scheduled in a particular store. Elek depostion, 177:4-15. Safeway controlled the selection of stores where plaintiff would be scheduled. As such, there is not an adverse action in the particular circumstances of this case.

Even if it could be said the removal from the Pendleton store schedule was an adverse action, defendant has articulated legitimate, nonretaliatory reasons for the actions taken and plaintiff, all things considered, has not adequately shown that the reasons could be pretextual. Such is discussed below.

Plaintiff was injured at the Pendleton store on the afternoon of January 19, 2007. He received a fax that morning from defendant that included his potential February schedule. Such included two days at the Pendleton store. Plaintiff approved the schedule and faxed it back. Less than an hour after his afternoon injury, he was sent new schedules that did not have the Pendleton store on them.

8 - ORDER

Plaintiff recalled at his deposition an incident when he had an altercation with Dr. Seitz while he was working at the Pendleton store in late 2006. Plaintiff recalled the doctor threatened to get him fired. Regional Manager Marc Watt recalled at deposition that Dr. Seitz contacted him around January 5th regarding plaintiff. Watt recalls that "Dr. Seitz was still pretty wound up when he talked to me. What he told me was that at the Pendleton pharmacy the prior week, and I think it was the 29th, he had been extremely rudely treated by a pharmacist who was unprofessional and he had never been treated this way." Watt 93:16-25. The doctor told Watt "that there was a patient of his -I believe it was a 90 year old male- had a prescription for a a controlled Schedule 2 controlled substance that we had trouble in filling. It had all been taken care of and authorized, and then he got a call back from this unnamed pharmacist, and he did not know who it was, that was rude, challenging him and they got into this huge shouting match." Watt 94 1-11. Watt testified that "what made [the doctor] angry and what prompted the call to me was apparently when he saw the patient again on the 2nd [after the doctor's phone conversation with plaintiff in late December], the patient informed him that after the initial blow up when I believe Jon was dispensing the prescription to the patient's wife, he had been told that Jon had spent a period of time telling the patient's wife how incompetent his physician was and should have known better. That is really what set him off." Watt 94:11-23. Watt also noted that, in addition, the patient's wife, who was 87, shared with the doctor that Elek insisted that she drive back to the hospital on a snowy night to get a new prescription allowing for a generic

9 - ORDER

substitute rather than taking the change over the phone by calling the doctor.

Watt stated that the doctor was very influential in the small Pendleton community and threatened to stop sending patients to Safeway if he had another negative interaction with plaintiff and to tell every doctor in the clinic and hospital not to send their patients to Safeway. Watt testified he made the decision to not send plaintiff back to Pendleton because there was a threat of huge economic sanctions, the threat was connected to plaintiff and it just seemed very common sense to remove plaintiff if he could be scheduled elsewhere.[4]

Watt testified that he told his scheduler of his decision regarding the Pendleton store prior to the injury on January 19th. He states he told the scheduler of the decision sometime between January 5th and the early part of the following week. The scheduler states that Watt told her of the schedule change in the first week of January and she informed plaintiff that he would not be working at the Pendleton store before she learned of the injury. She also told plaintiff that the decision was based on the doctor's complaints from several weeks earlier and that the Pendleton decision was made long before he was injured.

---

[4]The doctor admitted to Watt that he was inappropriate in his conversation with plaintiff as he got out of line and called plaintiff an asshole in December. Plaintiff makes much of this, but there is no indication that the doctor ever retracted his economic threats which Watt testified were the basis for Watt's decision to remove plaintiff from Pendleton. Moreover, the doctor's economic threats of January 5th were based on events the doctor learned of after the doctor's conversation with plaintiff in late December in which the doctor called plaintiff an asshole.

10 - ORDER

It is worth noting that plaintiff is still assigned to stores in regional manager Watt's region. Common sense would indicate that if Safeway wanted to retaliate against plaintiff, it would limit his assignments throughout Oregon. Common sense would also indicate that if Watt wanted to retaliate against plaintiff, Watt would limit plaintiff's assignments throughout Watt's region, especially in Central Oregon which was plaintiff's home area. Such did not occur. Watt's only limitation of plaintiff's assignments involved three Eastern Oregon stores where Watt asserted legitimate, nonretaliatory reasons for the limitation.

As set forth above, defendant has articulated legitimate, nonretaliatory reasons for the actions taken and plaintiff, all things considered, has not adequately shown that the reasons could be pretextual.

<u>The La Grande and Baker City Stores</u>

Unlike the Pendleton store, plaintiff does not assert any kind of tie to the La Grande and Baker City stores in Eastern Oregon. In fact, plaintiff did not notice any change in scheduling for these stores.[5] As such, in addition to not having a guarantee to any particular store, it would be hard to say that the schedule change for these stores (stores that potentially could be on plaintiff's schedule and then were not) was an action that would deter plaintiff from engaging in protected activity. As such, there was not an adverse action.

---

[5]Plaintiff testified that he only learned of the removal from these stores during the BOLI investigation of his retaliation claims and during depositions in this case. P. 8 of Plaintiff's Opposition(#55).

11 - ORDER

Even if it could be said there was an adverse action, defendant has articulated legitimate reasons for the actions taken and plaintiff has not adequately shown that the reasons could be pretextual. Watt removed plaintiff from the schedules for the La Grande and Baker City stores in Eastern Oregon based on: complaints and requests from those stores not to send plaintiff back; the fact that defendant controlled the selection of stores scheduled; and the ability of schedulers to offer plaintiff hours at other stores closer to plaintiff's home store in Central Oregon. P. 8-9 of Amended Reply(#83). As previously stated, it is worth noting that plaintiff is still assigned to stores in regional manager Watt's region. Common sense would indicate that if Safeway wanted to retaliate against plaintiff, it would limit his assignments throughout Oregon. Common sense would also indicate that if Watt wanted to retaliate against plaintiff, Watt would limit plaintiff's assignments throughout Watt's region, especially in Central Oregon which was plaintiff's home area. Such did not occur. Watt's only limitation of plaintiff's assignments involved three Eastern Oregon stores where Watt asserted legitimate, nonretaliatory reasons for the limitation.

4. Reduction of Hours

Plaintiff asserts that his hours were unilaterally reduced by Safeway and he was forced to beg for hours. However, an examination of such allegations indicates that actionable retaliation is not present in this case.

Plaintiff admitted at his deposition that he is solely responsible for making sure he gets an adequate amount of work. Elek Deposition, 185: 16-17. Plaintiff has offered argument and materials indicating that he has had an overall reduction of hours in 2007 as compared to 2006. Defendant contends and articulated through materials that the reason for the reduction in hours was solely due to the fact plaintiff declined the hours offered to him. Plaintiff repeatedly offered a Heismanesque straight-arm to the question of whether there was any time period during 2007 when he was available to work 40 hours but did not get 40 hours of work. At his deposition, plaintiff stated he could not recall at that time any time in 2007 when he was available to work 40 hours but did not get 40 hours. He added that he had the ability to go through all his records to make such determination. See p. 5 of Plaintiff's Opposition(#55). Plaintiff did not provide such determination in his initial briefs or at oral argument. Because plaintiff had not adequately shown that defendant's reason for the reduction of hours was pretextual, this court offered plaintiff an opportunity to supplement the record to do so. Plaintiff was directed to address whether the reduction in hours was a result of retaliation or plaintiff's choice and whether he ever asked for hours that were denied.

In his supplement, plaintiff admits that the reduction of hours issue gradually improved over the course of the year. P. 2 of Plaintiff's Supplemental Brief (#67). Elek Depostion, 185: 16-17. Plaintiff contends he was "shorted" nine shifts in March. However, defendant notes the following in its Reply to the Supplemental Brief: Plaintiff admitted at his deposition that he is solely responsible for

13 - ORDER

making sure he gets an adequate amount of work. Elek Deposition, 185: 16-17. Plaintiff pre-approved his March schedule stating "looks good." A scheduler asked "is that all you want to work? This is fine but I wanted to make sure before I gave away other days." Plaintiff responded "yes, for now that is all I want to work. I may decide to work more days in future months." The scheduler later stated that "if you want more days let me know. I have plenty." P. 3 of Reply to Supplemental Brief(#69).

Plaintiff was initially scheduled for March 28, 2007, but the particular store that had originally requested the coverage subsequently cancelled the request. Plaintiff was also initially scheduled for March 23rd and March 24th in the Pendleton store, but those dates in Pendleton were cancelled as discussed more fully in the previous section.

Plaintiff also states that he was "shorted" four shifts in May. Defendant notes the following in its Reply to the Supplemental Brief: Plaintiff admitted at his deposition that he is solely responsible for making sure he gets an adequate amount of work. Elek Deposition, 185: 16-17. Plaintiff approved his May schedule and stated he had "no changes" and that it "looks good." He made no mention of any desire to add hours to his May schedule or to work on the four shifts he now states he was shorted. He declined five scheduled shifts to take vacation and declined to accept two shifts he was offered at store 1888 because he did not want to work there. [6] Plaintiff was also

---

[6] The record is replete with references to plaintiff turning down or not accepting hours offered and requesting he not be scheduled at certain stores. For example, plaintiff declined offers of future scheduling at Store 4469 in Burns (for management's "inability to
(continued...)

offered and declined numerous other shifts in May that needed to be filled. The scheduler asked plaintiff "are you available any more in May?? I have these shifts still to fill:...."
P.p. 4-5 of Reply to Supplemental Brief(#69).

Plaintiff asserts that he requested a shift on May 31 at Store 1504 that he later learned was filled by a contract pharmacist and that it is defendant's policy to use a contract pharmacist only when an employed pharmacist is unavailable. Defendant notes in its Reply to the Supplemental Brief that no one, including plaintiff, elected to work on May 31st when that date was first offered in April and thus the date was filled by a contract pharmacist. Plaintiff subsequently responded to the April offer of 19 shifts and requested May 31st. He did not request any of the other 18 shifts offered in April and his request for May 31st was not timely. See P. 5 of Reply to Supplemental Brief (#69).

Despite this court's direction, plaintiff did not or could not point out any other instances where he requested hours and was denied.

Based on the submissions discussed above, and the fact plaintiff admitted he is solely responsible for making sure he gets an adequate amount of work and that the reduction in hours issue gradually improved over the year, it is clear here that "the would-be retaliatory action is so insignificant that it does not deter the exercise of [protected] rights, and thus does not constitute an adverse action within the meaning of ... retaliation cases." See

---

[6](...continued)
solve a simple conflict/problem,"Exh. B-1 to #58) and at store 1888 in Junction City ("it's the most miserable/disorganized/chaotic and poorly run pharmacy I have ever worked in," Exh. B-3 to #58).

15 - ORDER

Coszalter, 320 F.3d at 975. Even if it could be said there was an adverse action in the particular circumstances of this case, defendant has articulated legitimate reasons for the actions taken and plaintiff, all things considered, has not adequately shown that the reasons could be pretextual despite being given an additional opportunity to do so.

All of plaintiff's other arguments regarding defendant's motion have been considered and found unpersuasive.

## CONCLUSION

Defendant's motion (#45) for summary judgment should be allowed and this action should be dismissed.

DATED this 15th day of January, 2009

THOMAS M. COFFIN
United States Magistrate Judge

16 - ORDER